# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

Nos. 15-3912, 16-1203
Consolidated with Nos. 15-3909, 16-1245

_____

IN RE TARGET CORPORATION CUSTOMER DATA
SECURITY BREACH LITIGATION

MDL No. 14-2522 (PAM/JJK)

LEIF A. OLSON,

Objector/Appellant

_____

Appeal by Objector from Order Granting Final Approval of Class Action
Settlement, U.S. District Court for the District of Minnesota,
Judge Paul A. Magnuson

---

# CONSUMER PLAINTIFFS/APPELLEES' RESPONSE TO APPELLANT OLSON'S MOTION TO VACATE PART OF APPEAL BOND

---

Vincent J. Esades (MN# 249361)
David Woodward (MN# 018844X)
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel.: (612) 338-4605
Fax: (612) 338-4692

Consumer Plaintiffs/Appellees' Lead Counsel

(Additional counsel listed on signature pages)

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT.............................................................................3

    A.    The Appeal Bond is Proper under Federal Rule of Appellate
            Procedure 7 and Persuasive Precedent....................................3

    B.    Appellant's Arguments are Unavailing..............................11

          1.    Rule 8's independent provision governing supersedeas
               bonds is not controlling............................................11

          2.    Appellant's argument that there is no basis for
               including administrative costs in a Rule 7 appeal bond
               is incorrect................................................................13

          3.    Appellant mischaracterizes the District Court's bond
               order ..........................................................................18

          4.    There is no basis for severing joint and several
               liability .....................................................................20

III.   CONCLUSION.........................................................................20

i

Appellate Case: 15-3912   Page: 2   Date Filed: 02/23/2016 Entry ID: 4370326

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998)..................................................... passim

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007)...... 7, 8, 9, 12

*Barnes v. Fleetboston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 WL
    6916834 (D. Mass. Aug. 22, 2006) ...............................................................6, 10

*City of Livonia Emps.' Retirement Sys. v. Wyeth*, No. 07-Civ.10329
    (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) .........................................19

*Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013)...............6

*Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 7887788 (E.D. Pa.
    Dec. 3, 2015).................................................................................................5, 13

*Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2013 WL 752637
    (S.D. Ind. Feb. 27, 2013) ...........................................................................6

*Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL
    307777 (3d Cir. June 10, 1997) ...............................................................7

*In re Am. President Lines, Inc.*, 779 F.2d 714 (D.C. Cir. 1985)........................8, 11

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices
    Litig.*, No. 09-md-2023 (BMC), 2013 WL 4735641 (E.D.N.Y. Sept. 3,
    2013) .........................................................................................................4

*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004)............. 6, 7, 9, 12

*In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012
    WL 456691 (S.D. Fla. Feb. 14, 2012) .................................................... 6, 14, 15

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL
    1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) .........................................6, 15

*In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145
    (S.D.N.Y. 2014)..................................................................................... 4, 12, 14

*In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289 (S.D.N.Y.
    2010) .........................................................................................................4, 16

Appellate Case: 15-3912    Page: 3    Date Filed: 02/23/2016   Entry ID: 4370326

*In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184 (GEB), 2007 WL
    1963063 (D.N.J. July 2, 2007)..........................................................................20

*In re Navistar Diesel Engine Prods. Liab. Litig.*, No. 11 C 2496, MDL
    No. 2223, 2013 WL 4052673 (N.D. Ill. Aug. 12, 2013) .....................................4

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772
    (N.D. Cal. Nov. 25, 2013)...................................................................................6

*In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x
    53 (3d Cir. Sept. 29, 2014)...................................................................... passim

*In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274
    (D. Mass. 2007)..............................................................................................6, 10

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716
    F.3d 1057 (8th Cir. 2013) ....................................................................................9

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-
    MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) ..... 8, 15, 20

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, Nos. 12-
    2761/3179, slip op. (8th Cir. Sept. 28, 2012) .....................................................8

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-cv-00225,
    2010 WL 786513 (D. Nev. Mar. 8, 2010) ...........................................................6

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010).............19

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015)..........................17

*Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785
    (N.D. Cal. Aug. 27, 2012).......................................................................... 4, 6, 16

*Pedraza v. United Guar. Corp.*, 313 F.3d 1323 (11th Cir. 2002) ............................7

*Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) ............................................ 14, 17

*Tennille v. W. Union Co.*, 774 F.3d 1249 (10th Cir. 2014) ...................................3, 8

*Young v. New Process Steel, LP*, 419 F.3d 1201 (11th Cir. 2005).....................7, 16

Appellate Case: 15-3912     Page: 4     Date Filed: 02/23/2016 Entry ID: 4370326

**Rules**

Fed. R. App. P. 7.................................................................... passim

Fed. R. App. P. 8.............................................................. 11, 12, 13

Fed. R. App. P. 38.................................................................. passim

Fed. R. App. P. 39.................................................................. passim

Fed. R. App. P. 39(e)........................................................................9

Fed. R. Civ. P. 23(e).........................................................................1

iv

# I. INTRODUCTION

On November 17, 2015, the Honorable Paul A. Magnuson gave final approval to a settlement of the consumer actions in this multidistrict litigation arising out of the 2013 breach of data security at Target Corporation. Mem. & Order, ECF No. 645. The settlement provides that Target will pay $10 million to settle the claims of class members and pay service awards to the class representatives. *Id.* at 2. Class members who file claims with documentary proof of their loss will be reimbursed for both their out-of-pocket loss and certain time lost, up to a maximum of $10,000 per claim. *Id.* Class members who file claims without documented proof of loss will receive an equal share of the $10 million settlement fund after service awards and documented claims have been paid. Based on a preliminary analysis of claims made, Plaintiffs estimate that payment for undocumented claimants, after payment of documented claims, will be approximately $40 per claimant. *Id.* The settlement provides additional non-monetary relief to all class members by requiring Target to take identified steps "to improve its data security practices in significant ways" and requires Target to pay all class notice and administrative expenses in addition to the $10 million settlement fund. *Id.*

Applying established legal standards, Judge Magnuson granted final approval of the settlement as fair, reasonable and adequate under Fed. R. Civ. P.

1

23(e). *Id.* at 9. Only 10 class members, constituting .0000103 % of the class, objected to the settlement. *Id.* at 5. The District Court found that "the settlement represents a significant victory for [the] class." *Id.* Judge Magnuson carefully considered and rejected all objections. *Id.* at 7.

Appellant never filed a claim, documented or undocumented. *See* Decl. of Amy Lake Regarding Settlement Administration ¶ 6, ECF No. 682. Appellant filed a Notice of Appeal on December 15, 2015. ECF No. 668.

On January 29, 2016, the District Court directed four objectors who had appealed,[1] including Appellant, to deposit an appeal bond in the amount of $49,156. Am. Mem. & Order, ECF No. 713 (attached as Ex. 1). Appellant paid the bond. Another Objector/Appellant, Jim Sciaroni, moved to stay imposition of the appeal bond. The District Court denied the motion to stay, reasoning that "the Court's Amended Order requiring a bond has been fully satisfied" and "Objector Sciaroni's Motion is therefore moot." Order at 1, ECF No. 717 (attached as Ex. 2). Appellant Sciaroni's motion requesting that this Court stay the appeal bond order is pending in No. 16-1245. Appellant Olson has now moved this Court to vacate

---

[1] Consumer Plaintiffs/Appellees subsequently filed a motion to dismiss the appeal of objector Sam A. Miorelli on grounds he was not a member of the Class and therefore lacked standing. On January 26, 2016, this Court dismissed Appellant Miorelli's appeal. *See* No. 15-3915, Judgment. Appellant Lindsay Gibson voluntarily dismissed her appeal. *See* Judgment entered January 27, 2016 in No. 15-3914.

the appeal bond, or, alternatively, to vacate its joint and several liability provision and require Appellant Sciaroni to pay one-half of the bond or dismiss his appeal. Consumer Plaintiffs/Appellees respectfully request that Appellant's motion be denied for the following reasons.

## II.    ARGUMENT

### A.    The Appeal Bond is Proper under Federal Rule of Appellate Procedure 7 and Persuasive Precedent.

The $49,156 appeal bond ordered by the District Court comprises $2,284 in direct appeal costs (including the costs of obtaining any necessary transcripts, printing costs and other copying costs) and $46,872 in administrative costs the Claims Administrator will incur during the appeals (including maintaining the settlement website and toll-free telephone number and responding to class members' inquiries, conservatively assuming disposition of the appeals occurs in six months). The component of direct appeal costs is factually supported by the Declaration of Vincent J. Esades, ECF No. 681. Appellant does not challenge inclusion of the direct appeal costs in the bond.  Mot. at 7 (conceding that "the $2,284 copying costs are taxable under Rule 39" ). Courts routinely approve appeal bonds to cover such direct appeal costs and generally do so for higher amounts.[2]

_____

[2] *See, e.g.*, *In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x 53, 61(3d Cir. Sept. 29, 2014) (affirming imposition of an appeal bond that included $2,500 for direct appeal costs); *Tennille v. W . Union Co.*, 774 F.3d 1249, 1257 (10th Cir.

3

The portion of the appeal bond representing administrative costs is supported by the Declaration of Amy Lake Regarding Settlement Administration Costs During the Appeal Process ¶ 4, ECF No. 682 (estimating that administrative costs, including the costs of maintaining the settlement website and toll-free number and responding to class members' inquiries during the pendency of the appeals, will be $7,812 per month and total $140,616, assuming the appeals are resolved by this Court within 1.5 years, or $93,744 if the appeals are decided within one year, or $46,872 if disposition occurs within six months). Appellant did not submit any contrary evidence disputing Consumer Plaintiffs' estimated direct appeal costs or their conservative showing of $46,872 in increased administrative costs (assuming appellate resolution within the shortest estimated time of six months). Appellant challenges only the amount of the ordered bond, the part of the bond covering increased administrative costs.

---

2014) (reducing taxable costs part of appeal bond from $25,000 to $5,000); *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 150 (S.D.N.Y. 2014) (granting appeal bond including $5,700 for taxable costs); *In re Navistar Diesel Engine Prods. Liab. Litig.*, No. 11 C 2496, MDL No. 2223, 2013 WL 4052673, at *3 (N.D. Ill. Aug. 12, 2013) (lowering appeal bond from requested $25,000 to $5,000); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2013 WL 4735641, at *3 (E.D.N.Y. Sept. 3, 2013) (awarding $5,000 bond for printing and copying costs); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) (imposing appeal bond that included $10,000 in Rule 39 taxable costs); and *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 297 (ordering appeal bond that included $25,000 in taxable costs).

4

The District Court properly included administrative costs as part of the appeal bond. Rule 7 provides: "In a civil case, the district court may require an appellant to file a bond or provide other security *in any form and amount necessary to ensure payment of costs on appeal*." Fed. R. App. P. 7 (emphasis added). The purpose of Rule 7 is to protect an appellee against the risk of non-payment by an unsuccessful appellant. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998). Determining the need for a bond and its amount is within the district court's discretion. Fed. R. App. P. 7 advisory committee's note to 1979 amendment; *Adsani*, 139 F.3d at 79.

Numerous federal courts have recognized that a Rule 7 bond may include the ongoing costs of settlement administration during an appeal. For example, a district court recently directed the objector to a class settlement to post a Rule 7 bond of $28,150, including direct appeal costs and $27,600 in administrative costs (based on assumed appellate resolution within one year) that the claims administrator "will reasonably incur during the prosecution of the appeal to maintain the settlement website and toll-free telephone number and to respond to class members' inquiries." *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 7887788, at *1, *4 (E.D. Pa. Dec. 3, 2015). Federal courts have repeatedly found

5

that Rule 7 appeal bonds may properly include administrative costs resulting from

appeals by objectors to class action settlements.[3]

---

[3] *See*, *e.g.*, *In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x at 61
(finding no abuse of discretion in district court's determination that an appeal bond
may properly include administrative costs); *Barnes v. Fleetboston Fin. Corp.*,
C.A. No. 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) ("First
Circuit case law indicates that 'costs,' as contemplated in Rule 7, include the costs
attendant to the delay associated with an appeal. . . ."); *Heekin v. Anthem, Inc.*, No.
1:05-cv-01908-TWP-TAB, 2013 WL 752637, at *2, *4 (S.D. Ind. Feb. 27, 2013)
(finding that "the excess administrative costs created by the delay incident to the
appeal, can be characterized as a 'cost of appeal' under Rule 7" and ordering each
objector to post appeal bond of $250,000, comprised of $15,000 for direct taxable
costs and $235,000 for administrative costs); *In re Netflix Privacy Litig.*, No. 5:11-
CV-00379-EJD, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013) (including
administrative costs in an appeal bond of $21,519 from each objector was proper);
*Miletak*, 2012 WL 3686785, at *2 ("[T]he Court finds good cause to impose an
appeal bond in the amount of $60,000, which represents solely the appellate costs
and administrative costs requested by Plaintiff."); *In re Checking Account
Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 WL 456691, at *2, *3 (S.D. Fla.
Feb. 14, 2012) (ordering bond because the appeal "prevent[ed] distribution of the
Settlement proceeds as ordered by this Court's Final Judgment" and finding that
"the highly detrimental impact of an appeal as to the entire class" supports
requiring objectors to post appeal bond); *In re Pharm. Indus. Average Wholesale
Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (appealing objector
required to post $61,000 bond for administrative costs that class will suffer during
appeal); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815, 818 (6th Cir. 2004)
(affirming requirement of bond including $123,429 for "incremental administrative
costs" due to an estimated six-month delay in disbursing settlement funds); *In re
Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003
WL 22417252, at *1-2 (D. Me. Oct. 7, 2003) (finding that costs of delay or
disruption of settlement may be included in a Rule 7 bond and requiring $35,000
appeal bond); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1272 (W.D.
Wash. 2013) (imposing bond including $49,150 in additional settlement
administration costs); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No.
2:06-cv-00225, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (imposing

6

Appellate decisions are split on the issue. In *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004), the Sixth Circuit upheld imposition of an appeal bond of $174,429, which included $123,429 in administration costs. *Id.* at 813. In an unpublished opinion, the Third Circuit held that the district court erred in directing that plaintiff post a bond to include defendant's estimated appellate attorneys' fees on grounds that the costs of appeal do not include attorneys' fees. *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997). However, the Third Circuit subsequently recognized that ongoing costs of settlement administration during an appeal may be included in a Rule 7 bond. *In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x at 60-61 (district court did not abuse its discretion in imposing an appeal bond including $20,000, one year's worth, of administrative expenses).

On the separate issue of whether an appeal bond may include attorneys' fees, the Ninth and Eleventh Circuits have held that a district court may properly include in an appeal bond appellate attorneys' fees if there is a statute or rule making such costs recoverable. *See Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 953-54 (9th Cir. 2007); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1329-30 (11th Cir. 2002); *see also Young v. New Process Steel, LP*, 419 F.3d 1201, 1207-08 (11th

---

$500,000 appeal bond, including administrative costs on finding objections "are without merit and will almost certainly be rejected" on appeal).

7

Cir. 2005) (a district court may require unsuccessful plaintiff in civil rights case to post a bond that includes both ordinary costs and defendant's anticipated appellate attorneys' fees if the court determines the appeal is likely to be frivolous, unreasonable or without foundation). The Tenth Circuit has held that "costs on appeal" under Rule 7 include only appellate costs authorized by rule or statute. *Tennille v. Western Union Co.*, 774 F.3d 1249, 1255 (10th Cir. 2014).

The D.C. Circuit has taken the narrow position that Rule 7 costs are limited to those that are taxable against an unsuccessful litigant under Federal Rule of Appellate Procedure 39. *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985) (*per curiam*). The Ninth Circuit referred to that case as representing the "older, minority rule." *Azizian*, 499 F.3d at 955.

This Court has not resolved the issue of whether a Rule 7 bond may include administrative costs. In *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012), the district court imposed a $170,000 appeal bond, which included direct appeal costs ($25,000), administrative expenses ($20,000), and costs of any additional class notice ($125,000). This Court stayed the requirement that the objectors post a bond in excess of $25,000 but otherwise denied the stay motion. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, Nos. 12-2761/3179, slip op. at 1 (8th Cir. Sept. 28, 2012). In subsequently upholding the settlement, the

8

Court briefly noted that it had stayed the order for an appeal bond above $25,000, but did not address objectors' argument that the district court had abused its discretion in ordering an excessive appeal bond, because the parties had accepted the Court's earlier stay ruling. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1062 n.3 (8th Cir. 2013). The Court neither discussed nor ruled upon the issue of whether a Rule 7 bond may include increased administrative costs on appeal (nor did it specify what particular category of the appeal bond components ordered by the district court were "excessive"). Thus, Plaintiffs/Appellees respectfully disagree with Appellant's assertion that *Uponor* supports exclusion of administrative costs in a Rule 7 bond. Mot. at 7 – 8.

Allowing inclusion of administrative expenses in a Rule 7 appeal bond makes sound judicial and common sense for several reasons. First, Rule 7 itself does not define "costs on appeal." Second, nothing in Rule 39, or its history, suggests that it was intended to define what costs are included under Rule 7. *See Azizian*, 499 F.3d at 958 (noting that "the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal"); *Adsani*, 139 F.3d at 75 (rejecting notion that Rule 39 defines "costs" throughout the Federal Rules of Appellate Procedure and stating, "Rule 39 has no definition of the term 'costs' but rather defines the circumstances under which costs should be awarded"); and *Cardizem*, 391 F.3d at 817 (Rule 39 "does not define 'costs' at all; rather, it merely

9

lists which costs of appeal can be 'taxed' by the district court if it chooses to order one party to pay costs to the other") (citation omitted).

Third, as discussed below, Federal Rule of Appellate Procedure 38 allows courts of appeal to award "damages and . . . costs" for bringing a frivolous appeal. Such costs include "damages, attorney's fees and other expenses incurred by an appellee." Fed. R. App. P. 38 Advisory Committee Notes (1967). Fourth, fairness and policy considerations strongly support inclusion of administrative costs, particularly where, as the District Court determined here, the objections lack merit and Plaintiffs have demonstrated the significant expenses that will be incurred in opposing appeals based on meritless objections. *See*, *e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d at 279 ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."); *Barnes v. Fleetboston Fin. Corp.*, 2006 WL 6916834, at *1 ("[T]he burden of litigating frivolous appeals [should] shift[ ] to [the objectors] instead of to the class."). Thus, despite the split of authority, the better reasoning reflected in the numerous cases Plaintiffs invoke supports the District Court's inclusion of increased administrative costs in the appeal bond.

10

The District Court "rejected the objections to the settlement, finding that the objections had no merit, and in any event did not warrant rejection of the fair and reasonable settlement" and concluded:

> Consumer Plaintiffs have established that an appeal bond is warranted. The amount they seek is but a fraction of the costs they are likely to incur defending an appeal that will almost certainly be unsuccessful. They are therefore entitled to the full amount of the bond they seek.

Am. Mem. & Order at 1 and 3, ECF No. 713. This conclusion is amply supported by Rule 7 and the precedent discussed above.

### B. Appellant's Arguments are Unavailing.

#### 1. Rule 8's independent provision governing supersedeas bonds is not controlling.

Appellant argues that increased administrative costs may appropriately be included in a Rule 8 supersedeas bond but not in a Rule 7 bond. Mot. at 1 and 4-5. Appellant is wrong. First, the District Court imposed, an appeal bond pursuant to Fed. R. App. P. 7. Rule 8's independent provisions for a stay and a supersedeas bond are inapplicable. No objector requested a stay of Judge Magnuson's Order granting final approval of the settlement and no party posted a supersedeas bond.

Second, Appellant's contention is premised on the assumption that Rule 39 provides the exclusive parameters of what costs may be included in a Rule 7 bond. Appellant cites *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985) (stating that "[t]he costs referred to . . . are simply those that may be taxed against

11

an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorneys' fees that may be assessed on appeal"). As discussed, other courts have rejected the view that Rule 7 costs are limited to only those allowed under Rule 39. *See Azizian*, 499 F.3d at 958; *Adsani*, 139 F.3d at 75; and *Cardizem*, 391 F.3d at 817.

Third, the numerous federal courts that have included administrative costs in a Rule 7 appeal bond have not been constrained by the independent supersedeas bond provisions in Rule 8. The fact that the vast majority of such cases do not even discuss Rule 8 indicates that the independent supersedeas bond provisions of Rule 8 are just that—distinct bond provisions that do not restrict imposing appropriate Rule 7 appeal bonds.

Fourth, Appellant's position was carefully considered and rejected in *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 152 (S.D.N.Y. 2014) (rejecting view that increased settlement administration costs should be addressed through a supersedeas bond). The court reasoned that the "[a]dditional costs accrued pending appeal are prospectively incurred new damages and may not be recovered through a supersedeas bond." *Id.* Additionally:

> There is a second reason why a supersedeas bond is not the appropriate vehicle to protect against damages incurred from a frivolous appeal. A district court cannot *force* an appellant to post a supersedeas bond . . . . The district court may not *sua sponte* order the appellant to post such a bond. . . . Thus, where an objector lodges a frivolous appeal to a class action settlement, a district court may

12

impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal.

*Id.* at 153. Thus, Appellant's decision not to seek a stay of the District Court's order granting final approval of the settlement or to post a Rule 8 supersedeas bond does not and cannot preclude imposition of an appropriate bond under Rule 7.

2.    <u>Appellant's argument that there is no basis for including administrative costs in a Rule 7 appeal bond is incorrect.</u>

Appellant invokes cases holding that a Rule 7 appeal bond may include costs in addition to those costs taxable under Rule 39 if such costs are recoverable under an underlying statute or rule. Mot. at 8-9. Appellant argues that "there is no statute or rule authorizing plaintiffs to recover administrative costs." Mot. at 9. Appellant's position is untenable.

The numerous federal court decisions discussed above allowing inclusion of administrative costs in an appeal bond often do not cite to any underlying statute or rule in addition to Rule 7. *See, e.g., Glaberson*, 2015 WL 7887788, at *3 (applying Rule 7 bond factors and finding that "including the costs of administering the class settlement in the appeal bond is appropriate under the present circumstances," relying on the Third Circuit's *Nutella* decision).

Further, decisions within the line of authority Appellant relies upon do not require that costs be defined solely in an applicable fee-shifting statute, but allow inclusion of costs allowed by any other authority, including a rule. *See*, *e.g.*,

13

*Adsani*, 139 F.3d at 73 (holding that Rule 7 refers to "all costs properly awardable under the relevant substantive statute or other authority"); *see also In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 157 (holding that "[t]he authority to award costs is not limited to the costs awarded under a fee-shifting statute" but includes all costs that may be awarded in an action).

Appellant is mistaken in asserting the absence of authority supporting inclusion of administrative costs in a Rule 7 bond. As noted, Rule 7 itself and the numerous decisions allowing appeal bonds with an administrative costs component, without referencing an underlying statute or additional rule, provide ample support for the District Court's bond order. Additionally, Rule 38 has been recognized as an additional authority for such bonds. For example, in *In re Gen. Elec. Co. Sec. Litig.*, the district court ordered a Rule 7 appeal bond in the amount of $54,700, including $5,700 in ordinary appellate costs and $49,000 in administrative costs. The court concluded that "Rule 7 costs also include damages imposed under Rule 38." 998 F. Supp. 2d at 157 (citation omitted).

Other courts have considered the frivolous nature of objections or appeals as a basis for including administrative costs in a Rule 7 bond. *See Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (finding that "the district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous"); *In re Checking Account Overdraft Litig.*, 2012 WL 4566191, at *2 ("Courts therefore

14

commonly impose Rule 7 appeal bonds in the class action context where necessary to protect class members 'from the burdens that stem from being forced to defend frivolous lawsuits.'") (citation omitted); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at *1 (finding that "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond"); *Nutella*, 589 F. App'x at 61 (district court did not abuse its discretion in finding that an appeal bond was appropriate because the objectors' appeals were meritless).

Appellant further argues that "a Rule 7 bond can only secure costs that plaintiffs could *actually* recover from appellant if appellee were successful on appeal." Mot. at 12. There is no question that Rule 38, allowing recovery of "damages and . . . costs" upon a determination that an appeal is frivolous, applies to all parties, including Appellant. Rule 38 does not exclude from its scope objectors to a class action settlement.

Appellant maintains that determining whether an appeal is frivolous is best left to courts of appeal. Mot. at 15. However, district courts repeatedly consider the merits of the objector's appeal in determining whether a Rule 7 bond should be imposed. *See, e.g., In re Uponor, Inc.*, 2012 WL 3984542, at *2 (noting that Rule 7 bond factors include the merits of the appeal); *In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *2 ("Courts therefore commonly impose Rule 7 appeal

15

bonds in the class action context where necessary to protect class members 'from the burdens that stem from being forced to defend frivolous lawsuits.'") (citation omitted); *Miletak*, 2012 WL 3686785, at *1 (factors courts consider include the merits of the appeal). The District Court was correct in identifying the proper legal standards, the factors courts use in determining whether an appeal bond is warranted, including the merits of the appeal. Am. Mem. & Order at 2, ECF No. 713.

Indeed, courts reject the contention that determining whether an objector's appeal has merit is inappropriate in setting a Rule 7 bond. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (rejecting objectors' contention that "it is not for the district court to decide whether an appeal has merit"); *Adsani*, 139 F.3d at 79 (rejecting argument that district court was prejudging the case's chances on appeal, noting that such prejudging is part and parcel of a Rule 7 bond and that "[a] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal"). As the Eleventh Circuit noted, district courts are experienced in determining whether an appeal lacks merit. *Young*, 419 F.3d at 1207 (rejecting argument that it would be difficult for a district court considering a Rule 7 bond request "to determine prospectively whether an appeal is going to be frivolous, unreasonable, or without foundation," reasoning

16

that "[d]istrict courts . . . have a great deal of experience weighing the merits of potential appeals"). *See also Sckolnick*, 820 F.2d at 15 (upholding Rule 7 appeal bond order, noting that "the district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous").

Here, the District Court has twice determined that the objections to the settlement are without merit. Mem. & Order at 6-7, ECF No. 645; Am. Mem. & Order at 1, ECF No. 713. Appellant states that he appeals "the approval of a settlement with a single settlement class that fails to give any relief to an uncertified and unrepresented subclass while releasing all of that subclass's claims." Mot. at 2. Appellant's argument that there is a conflict between class members who suffered actual losses and those, who, like Appellant, have not, has already been considered and rejected by the District Court. This Court's decision in *Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015), is dispositive of Appellant's assertion that is both unsupported and factually wrong. All Class Member claimants who incurred losses will receive compensation under the Settlement, including those claimants who do not submit documentation of their losses. All Class Members, including Appellant who incurred no actual damages, will benefit from the equitable relief provided by the settlement. Appellant's assertion ignores both the facts and controlling Eighth Circuit precedent. Rule 38

17

thus provides an appropriate additional source of authority for the District Court's bond order.

3. Appellant mischaracterizes the District Court's bond order.

Appellant argues that the District Court "erred because whether an appellant is a professional objector is not an appropriate basis" for a bond. Mot. 13-15. The District Court did not "base" its order on Appellant's status as a professional objector. Simply as one part of its reasoning, the District Court stated that "[t]he Court 'treats with particular disapproval the objections and appeals of 'professional objectors' whose objections amount to a 'tax that has no benefit to anyone other than to the objectors' but serves to 'tie up the execution of a Settlement and further delay payment to the members of the Settlement Class' (citation omitted)" and that "Objectors Olsen [sic] and Gibson fall in this category of professional objectors." ECF No. 713, at 2-3.

Appellant contends that he is not a professional objector because his counsel disavows demanding payment for withdrawing appeals. Mot. at 14.[4] However,

_____

[4] In granting final approval of the settlement, the District Court noted:

> Olson first seeks an injunction against the settling parties paying objectors in exchange for the settlement of their objections. But neither the Center nor Olson have any evidence that Plaintiffs or Target have offered any payment in exchange for withdrawing objections to the settlement, raising the Court's suspicions that the

18

Appellant's counsel, the Center for Class Action Fairness, has represented numerous objectors in class actions. Theodore Frank, the founder for the Center of Class Action Fairness, has been criticized by courts on multiple occasions. *See*, *e.g.*, *City of Livonia Emps.' Retirement Sys. v. Wyeth*, No. 07-Civ.10329 (RJS), 2013 WL 4399015, at *5 (S.D.N.Y. Aug. 7, 2013) (rejecting Mr. Frank's objections because they did "not seem grounded in the facts of this case, but in [his]…objection to class actions generally"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (finding a brief filed by Mr. Frank on behalf of an objector to be "'long on ideology and short on law'") (citation omitted).  Independent of Appellant's status as a professional objector, it is clear that the District Court imposed the bond after invoking established factors courts use in evaluating a bond motion, and determining that Plaintiffs had demonstrated the financial harm the class will suffer in defending the appeal and had "established that an appeal bond is warranted." ECF No. 713 at 1 and 3.

Further, there is nothing in the record to support Appellant's contention that the District Court imposed "a punitive appeal bond to curtail objector appeals."

---

arguments in the Center's 36-page brief are boilerplate arguments raised against every class-action or multidistrict litigation settlement.

Mem. & Order at 6, ECF No. 645.

Mot. at 15. There is nothing "punitive" about the District Court's bond order. It has clearly not deterred any appeal. Appellant paid the bond in full.

### 4. There is no basis for severing joint and several liability.

Plaintiffs/Appellees do not oppose any requirement that Appellant Sciaroni pay one-half of the bond. However, there is no need or basis for vacating the bond's provision making Appellants/Objectors jointly and severally liable. The Court's broad discretion under Rule 7 extends to requiring objectors to be jointly and severally liable for a bond. *See*, *e.g.*, *Uponor*, 2012 WL 3984542, at *2 ("Within its discretion, the court may make objectors jointly and severally liable for the bond payment"); *In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3 (D.N.J. July 2, 2007) (providing objectors "will be jointly and severally responsible for posting the bond"). Appellant argues he should not have to pay from the posted bond if Appellant Sciaroni's appeal is deemed frivolous or vexatious. Mot. at 17. But it is Appellant's own appeal, and that of Appellant Sciaroni, that results in the increased administrative costs demonstrated by Plaintiffs. Appellant is responsible for his own conduct and is subject to the imposition of damages and costs, if his own appeal is determined frivolous by the Court pursuant to Rule 38.

## III. CONCLUSION

For these reasons, Appellant's motion should be denied.

20

Dated: February 23, 2016

Respectfully submitted,

s/ *Vincent J. Esades*
Vincent J. Esades (MN# 249361)
David Woodward (MN# 018844X)
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel.: (612) 338-4605
Fax: (612) 338-4692
vesades@heinsmills.com
dwoodward@heinsmills.com

**Lead Counsel Consumer Cases**

E. Michelle Drake (MN# 0387366)
BERGER & MONTAGUE, P.C.
100 South Fifth Street, 19th Floor
Minneapolis, MN 55042
Tel.: (612) 242-4296
emdrake@bm.net

**Liaison Counsel Consumer Cases**

John A. Yanchunis
MORGAN & MORGAN COMPLEX
LITIGATION GROUP, PA
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
Fax: (813) 223-5402
jyanchunis@forthepeople.com

**Executive Committee -
Coordinating Lead and Liaison
Counsel**

Daniel C. Girard
GIRARD GIBBS LLP
601 California Street, 14th Floor

21

San Francisco, CA 94108
Tel.: (415) 981-4800
Fax: (415) 981-4846
DCG@girardgibbs.com

Ariana J. Tadler
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229
atadler@milberg.com

Norman E. Siegel
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel.: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com

**Steering Committee Consumer Cases**

Appellate Case: 15-3912    Page: 27    Date Filed: 02/23/2016 Entry ID: 4370326

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2016, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Date:  February 23,  2016                    s/ *Vincent J. Esades*
                                              Vincent J. Esades

Appellate Case: 15-3912     Page: 28     Date Filed: 02/23/2016 Entry ID: 4370326